So Ordered.

Dated: August 22, 2025



Rachel M. Blise
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| In re: | |
|---|---|
| Jeffrey J. Kahle and Kristin C. Kahle, | Case No. 24-20054-rmb |
| | Chapter 7 |
| Debtors. | |

| Linda Toscano, | |
|---|---|
| Plaintiff, | Adversary No. 24-02078-rmb |
| v. | |
| Jeffrey J. Kahle, | |
| Defendant. | |

**DECISION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Debtor Jeffrey Kahle borrowed a total of $319,500 from creditor Linda Toscano. Toscano asks that the debt be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Kahle argues that he no longer owes a debt because Toscano released his liability under a Settlement Agreement with Kahle's company, Quartz World USA, LLC, and he seeks summary judgment dismissing Toscano's nondischargeability claim. Toscano did, indeed, grant a release to Kahle. But there are genuine issues of material fact regarding the scope of that release. The Court therefore denies Kahle's motion for summary judgment.

# FACTUAL BACKGROUND

At the time of the loans described below, Kahle was the sole member and owner of Quartz World USA, LLC. Dkt. No. 1 ("Compl."), ¶ 8. Quartz World conducted business out of a warehouse property located at 4350 W. Division Street, Chicago, IL 60651 (the "Division Street Property"). *Id.*, ¶ 15. The property was owned by JKahle Illinois, LLC. *Id.* Kahle sold his shares in JKahle Illinois in September 2022. *Id.*, ¶ 16.

Quartz World was negatively impacted by the Covid-19 pandemic. *Id.*, ¶ 9. According to Kahle, he sought financing from outside sources to cover increased shipping and other costs. Dkt. No. 37-3, ¶ 3. Toscano's husband, Terry Goeke, was a business associate of Kahle[1], and he introduced Kahle to Toscano. *Id.*, ¶ 4. Toscano thereafter agreed to loan money to Kahle. Toscano alleged in her complaint that "Kahle represented that the funds would be used for Quartz World to operate in light of the impact from those expenses and to purchase inventory for Quartz World." Compl., ¶ 9; *see also id.*, ¶¶ 11, 17, 20, 23. Kahle denies these allegations. *See* Dkt. No. 9, ¶¶ 9, 10, 15, 18, 21.[2] Kahle's alleged failure to use the funds as represented is one of the bases for Toscano's claim that the debt is nondischargeable; resolution of that issue can be reserved for trial.

Beginning in April 2021, Toscano and Kahle entered a series of five loan agreements: a promissory note dated April 26, 2021 in the amount of $50,000; a promissory note dated July 1, 2021 in the amount of $60,000; a promissory note dated October 5, 2021 in the amount of $75,000; a promissory note dated February 9, 2022 in the amount of $50,000; and a promissory

---

[1] Kahle says Goeke was his business partner in an entity called K10 European Cabinetry, LLC. Dkt. No. 37-3, ¶ 5. Toscano disputes that Goeke was ever a business partner with Kahle. Dkt. No. 43-2, ¶ 3. This factual dispute is not material to resolution of Kahle's motion for summary judgment.

[2] The paragraphs are mis-numbered in Kahle's answer, so the paragraph numbers do not align with those in Toscano's complaint.

note dated April 4, 2022 in the amount of $84,500 (together, the "Promissory Notes"). Dkt. No. 37-5. The total sum of all the Promissory Notes is $319,500. Kahle is the "Maker" on each of the notes. He signed the notes in his individual capacity and did not sign on behalf of Quartz World or any other entity. Quartz World is not a party to the Promissory Notes.

The latter four Promissory Notes each were accompanied by a Collateral and Security Agreement that includes the following language:

1. Collateral. To secure the payment and performance of the obligations and liabilities of Borrower to Lender under the Note and this Agreement (collectively, the "Obligations"), Borrower shall collateralize 10 shares of Plaza-20, which Borrower shall continue to hold (the "Shares"). Borrower also agrees to collateralize asset lien against 4350 W Division St. Chicago, IL 606051 [sic] property and inventory.

2. Security Interest. To secure the payment and performance of the Obligations, Borrower hereby grants to Lender a continuing first priority security interest in: (a) the Shares; and (b) all proceeds from sale of the Shares (collectively, the "Collateral"). Borrower shall have no right to withdraw, sell, pledge, transfer, or otherwise encumber the Collateral, without the prior written consent of Lender.

Dkt. No. 37-5. Plaza-20 refers to Plaza #20, Inc., a closely held corporation owned by Kahle's family members. Compl., ¶ 14. The record does not include any information indicating that either Toscano or Kahle took any action to perfect a security interest in the Plaza #20 shares, the Division Street Property, or Quartz World's inventory.

Kahle made some interest payments to Toscano under the Promissory Notes, but eventually defaulted on all five. Compl., ¶ 27. In November 2022, Toscano entered into a Settlement Agreement and Release with Quartz World (the "Settlement Agreement"). Dkt. No. 37-6. Kahle signed the Settlement Agreement on behalf of Quartz World; he did not sign in his individual capacity. *Id.*

3

The first recital of the Settlement Agreement states:

> **WHEREAS,** Quartz World is obligated to Creditor [Toscano] for an amount due, although the Parties are not necessarily in agreement over the exact amount due (the "Debt").

*Id.* at 1. The Settlement Agreement further provides that Quartz World will pay Toscano $320,000 plus interest. *Id.* This amount is just $500 more than the total of the five Promissory Notes. The Settlement Agreement also provides:

> 6. **Release.** Creditor releases and discharges Quartz World, and Quartz World releases and discharges Creditor, and their respective insurers, successors, assigns, employees, attorneys, agents, heirs, and administrators, including Mr. Jeffrey Kahle, or any guarantors and co-debtors, if any, from any and all claims, known or unknown, which each Party now has or in the future may discover relating to the Debt, or to the extent arising from the matters alleged [in] the Lawsuit or that could have otherwise been raised in the Lawsuit.

*Id.* at 2.[3]

The summary judgment record does not include any information regarding the negotiation or execution of the Settlement Agreement other than limited averments in the parties' declarations. Kahle states as follows in his declaration:

> I also negotiated with Plaintiff [Toscano] to have Quartz World repay the debts under the Notes as part of a settlement agreement.
>
> In exchange for Quartz World agreeing to be liable for the debt under the Notes, Plaintiff agreed to extended repayment terms and a release of all prior claims against me for the debts under the Notes.

Dkt. No. 37-3, ¶¶ 11-12. Toscano, in contrast, states:

> I entered into the agreement (called the "Settlement Agreement") with Jeffrey Kahle whereby Quartz World USA, L.L.C. also agreed to repay the amounts due on the promissory notes. At that time Jeffrey Kahle was in default on each of the notes. In exchange for Quartz World's agreement

---

[3] The capitalized term "Lawsuit" is not defined in the Settlement Agreement. Paragraph 4 of the Settlement Agreement requires "dismissal of any legal action or lawsuit" after the agreement was fully executed, but there is no evidence in the record suggesting that any lawsuit was pending when the Settlement Agreement was signed.

> to also be responsible for payment of the promissory notes, I agreed to extend repayment terms, and I did not pursue legal collection at that time action [sic] against Jeffrey Kahle. I did not agree to release any or all claims against Jeffrey Kahle on the promissory notes.
>
> The Settlement Agreement was prepared by Jeffrey Kahle's attorney. I was not represented by an attorney. It was sent to me for signature.

Dkt. No. 43-2, ¶¶ 5-6.

Quartz World defaulted under the Settlement Agreement. In October 2023, Toscano filed a lawsuit against Kahle and Quartz World in the Cook County, Illinois Circuit Court (the "Illinois Action"). Dkt. No. 37-7. Toscano's complaint included six claims – five breach of contract claims against Kahle under each of the Promissory Notes and one breach of contract claim against Quartz World under the Settlement Agreement. *Id.*

Kahle and his spouse filed a voluntary chapter 7 petition on January 5, 2024. Toscano voluntarily dismissed Kahle from the Illinois Action after he filed bankruptcy, but she continued the suit against Quartz World. In March 2024, the court in the Illinois Action entered a default judgment against Quartz World in the amount of $341,724.65. Dkt. No. 37-9.

Kahle's schedules included an unsecured debt owed to Toscano in the amount of $315,571.00 that he listed as disputed. Case No. 24-20054, Dkt. No. 1 at 31. Toscano filed a proof of claim in the bankruptcy in the amount of $401,290.23. Case No. 24-20054, Claim No. 21. She also filed this adversary proceeding seeking to except the debt from discharge under 11 U.S.C. § 523(a)(2)(A). Kahle now seeks summary judgment, arguing that the Settlement Agreement rendered the Promissory Notes unenforceable against him individually and that Toscano should be estopped from pursuing a case against Kahle because her claim is inconsistent with the judgment against Quartz World in the Illinois Action.

## DISCUSSION

Kahle's summary judgment motion raises two issues. First, Kahle argues that he owes no debt to Toscano because, pursuant to the Settlement Agreement, Toscano released him from liability under the Promissory Notes. Second, he argues that Toscano is estopped from asserting that he is liable under the Promissory Notes because she obtained a judgment against Quartz World for the same amounts due under the Promissory Notes.

### Summary Judgment Standard

Summary judgment is appropriate if the pleadings and affidavits on file show there is no genuine dispute as to any material fact and the moving party can establish it is entitled to judgment as a matter of law. *See* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56. An issue of material fact is a question that must be answered to determine the rights of the parties under substantive law and that can properly be resolved only "by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The movant may meet his burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citations omitted). If the moving party meets his burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### Kahle Release Under the Settlement Agreement

Toscano's adversary complaint includes a single claim in which she requests that the Court declare debts owed to her by Kahle to be nondischargeable under 11 U.S.C.

6

Case 24-02078-rmb    Doc 49    Entered 08/22/25 12:56:59    Page 6 of 15

§ 523(a)(2)(A). That section of the Bankruptcy Code excepts from discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2). A creditor must prove the existence of a prepetition debt as a threshold matter before the debt can be declared nondischargeable.

The parties agree that Kahle at one time owed a debt to Toscano under the Promissory Notes. The issue here is whether Toscano released Kahle's liability in the Settlement Agreement such that she can no longer collect the debt from Kahle individually. To determine whether Kahle is right and Toscano released Kahle's obligation under the Promissory Notes in the Settlement Agreement, the Court must interpret the provisions of the Settlement Agreement.

The Settlement Agreement states that its interpretation is governed by Wisconsin law. Dkt. No. 37-6 at 3. Under Wisconsin law, the "goal in contract interpretation is to give effect to the parties' intentions . . . by looking to the language of the contract itself." *Seitzinger v. Cmty. Health Network,* 2004 WI 28, ¶ 22, 270 Wis.2d 1, 676 N.W.2d 426. "Such language is to be interpreted consistent with what a reasonable person would understand the words to mean under the circumstances." *Id.* A court should not "read words into the contract that the parties opted not to include." *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶ 66, 363 Wis. 2d 699, 533 N.W.2d 679.

"If a contract provision is unambiguous, meaning that it is susceptible of just one reasonable interpretation, [a court] will construe it consistent with that unambiguous meaning." *Ripp Distrib. Co. v. Ruby Distrib. LLC*, 2024 WI App 24, ¶ 29, 411 Wis. 2d 630, 5 N.W.3d 930. "A contract provision is ambiguous if it is 'susceptible of more than one reasonable

interpretation.'" *Id.* (quoting *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶ 33, 330 Wis. 2d 340, 793 N.W.2d 476). "When the terms of a contract are ambiguous . . . evidence extrinsic to the contract itself may be used to determine the parties' intent, and any remaining ambiguities will be construed against the drafter." *Ash Park*, 2015 WI 65, ¶ 36. "Whether a contract is ambiguous is also a question of law." *Ripp Distrib. Co.*, 2024 WI App 24, ¶ 29. "Ultimately, the court's role is not to make contracts or reform them but to determine what the parties contracted to do." *Ash Park*, 2015 WI 65, ¶ 38.

Paragraph 6 of the Settlement Agreement provides that Toscano "*releases and discharges* Quartz World . . . [and its] insurers, successors, assigns, employees, attorneys, agents, heirs, and administrators, including *Mr. Jeffrey Kahle*, . . . from any and all claims, known or unknown, which [Toscano] has or in the future may discover *relating to the Debt* . . . ." Dkt. No. 37-6 at 2 (emphases added).[4] The parties appear to agree that Toscano granted a release to Kahle[5], but they do not agree on the scope of that release. At issue is the meaning of the phrase "relating to the Debt." Kahle argues that the phrase "relating to the Debt" includes the debt he owed to Toscano under the Promissory Notes. Toscano argues that the phrase includes only the debt that Quartz World owed to Toscano, and that she did not release Kahle's separate, personal liability under the Promissory Notes.

---

[4] The release provision also refers to "matters alleged [in] the Lawsuit or that could have otherwise been raised in the Lawsuit," Dkt. No. 37-6 at 2, but there is no evidence in the record of a lawsuit that was pending when the Settlement Agreement was signed and neither party has made an argument that Kahle's liability was released (or not) based on this term in the release provision.

[5] Toscano agrees that she granted a release to Kahle, but she argues that the release is no longer effective because Quartz World materially breached the Settlement Agreement. *See* Dkt. No. 43 at 7-8. Under Wisconsin law, "a material breach by one party may excuse *subsequent* performance by the other." *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis.2d 158, 183, 557 N.W.2d 67 (1996) (emphasis added). The problem with Toscano's argument is that her contractual obligation to grant a release is not *subsequent* performance. The release was effective upon signing, so there is no further performance to excuse by Quartz World's material breach.

8

The capitalized term "Debt" is defined in the Settlement Agreement. The agreement provides: "WHEREAS, Quartz World is obligated to Creditor [Toscano] for an amount due, although the Parties are not necessarily in agreement over the exact amount due (the 'Debt')." Dkt. No. 37-6 at 1. Based on the plain language on the contract, the defined term "Debt" means the amount that Quartz World owed to Toscano at the time of the Settlement Agreement. As Toscano notes, the Settlement Agreement makes no reference to any amounts due from Kahle to Toscano, nor does it refer to the Promissory Notes. Therefore, under the release provision in paragraph 6, Kahle was released from any liability on any debt that *Quartz World* owed to Toscano, not from any debt that *Kahle* owed to Toscano.

Nevertheless, the term "Debt" is ambiguous because the Settlement Agreement gives no clues as to the source of the amount that Quartz World owed to Toscano. The parties offer competing interpretations. Kahle argues that the parties intended for Quartz World to assume Kahle's debt under the Promissory Notes, making Quartz World the primary obligor and the person responsible for repaying the approximately $320,000 owed to Toscano. With Quartz World as the substituted, primary obligor, the release provision released all of Kahle's liability under the Promissory Notes. Toscano, on the other hand, argues that the parties intended for Quartz World to be an *additional* obligor on the debt so that Quartz World would be responsible for the $320,000 debt with Kahle. The release provision would release Kahle only from liability related to Quartz World's obligation to pay the debt but not on his own, separate liability under the Promissory Notes.

Both interpretations are reasonable and are supported by extrinsic evidence. Kahle avers in his declaration that the parties intended for Quartz World to repay the debts under the Promissory Notes and for Kahle himself to receive a release all his liability to Toscano. Dkt. No.

37-3, ¶¶ 11-12.  This is a reasonable interpretation, in part because it highlights the problems with Toscano's interpretation.  For example, it is unclear why Toscano agreed to include a release of Kahle in the Settlement Agreement if he still had liability under the Promissory Notes.  It is also unclear what effect the release of Kahle in the Settlement Agreement was meant to have if he still had liability.  *See Goebel v. First Fed. Sav. & Loan Ass'n of Racine*, 83 Wis. 2d 668, 680, 266 N.W.2d 352, 358 (1978) ("[C]ourts must avoid a construction which renders portions of a contract meaningless, inexplicable or mere surplusage.").

Kahle's interpretation is also supported by Toscano's deposition testimony.  Referring to the term "Debt," Kahle's lawyer asked Toscano, "Is it your understanding that the obligations referenced there are the amounts owed on the notes that we just reviewed?"  Toscano answered, "Yes."  Dkt. No. 37-10 at 39:14-22.  Based on this testimony, Toscano appears to have understood that Quartz World was or would be liable for the amounts due under the Promissory Notes.  Thus, one reasonable interpretation of the Settlement Agreement is that Quartz World was assuming the debt, and Kahle's liability was released.

Toscano's interpretation is also supported by the evidence.  Toscano provided a declaration stating that, while she agrees the "Debt" in the Settlement Agreement is essentially the same amount due under the Promissory Notes, she understood that the Settlement Agreement represented "Quartz World's agreement to *also* be responsible for payment of the promissory notes[.]"  Dkt. No. 43-2 at 2, ¶ 5 (emphasis added).  Contrary to Kahle's assertion, Toscano's declaration does not necessarily conflict with her deposition testimony.  By answering "Yes" to the question noted above, Toscano did not unequivocally say that Quartz World would be responsible for the debt under the Promissory Notes *instead of* Kahle.  It is also reasonable to infer that she meant Quartz World would be responsible for the debt *in addition to* Kahle.

In addition, the second recital in the Settlement Agreement states, "the Parties agree that they benefit by avoiding the uncertainties, risks and expenses of litigation over the Debt and by compromising, settling, and releasing, once and forever, any and all claims *among the Parties.*" Dkt. No. 37-6 at 1 (emphasis added). *See Levy v. Levy*, 130 Wis. 2d 523, 534, 388 N.W.2d 170, 175 (1986) ("The recital or whereas clause of a contract may be examined to determine the intention of the parties."). Kahle is not a party to the Settlement Agreement. Yet his interpretation suggests that the Settlement Agreement was meant to resolve a dispute between him and Toscano whereby Quartz World would become liable for Kahle's debt. Toscano reasonably argues that the Settlement Agreement was meant only to resolve a dispute with Quartz World as to its liability to Toscano and not to resolve any dispute over Kahle's liability.

Indeed, as Kahle himself notes, Quartz World may have had pre-existing liability for the debt owed to Toscano because Kahle had agreed to "collateralize" a lien against Quartz World's inventory in the Collateral and Security Agreements that accompanied four of the Promissory Notes. *See* Dkt. No. 44 at 2-3. If a lien had been granted on Quartz World's inventory to secure repayment of the Promissory Notes, then Toscano might have had the ability to collect a debt from Quartz World. *See id.* The Settlement Agreement's statement that "Quartz World is obligated to [Toscano] for an amount due," could plausibly refer to Toscano's lien rights. *See* Dkt. No. 44 at 3; Dkt. No. 37-6 at 1. Again, the record includes no information regarding the negotiation of the Settlement Agreement and whether that was the intent.

Kahle argues that it is "nonsensical" for him to retain liability under the Promissory Notes after the Settlement Agreement if Quartz World was obligated to repay the same debt. *See* Dkt. No. 44 at 3. What Kahle ignores is that multiple parties can be liable on the same debt. Just because Quartz World may have had an obligation to pay Toscano, under the Settlement

11

Agreement or otherwise, does not mean that Kahle could not also have had an obligation to pay. One entity can guaranty repayment of or otherwise agree to be liable for another's debt, obligating both of them. The creditor may collect from either, but may collect the full debt only once. It is not "nonsensical" to conclude that the release of Kahle in the Settlement Agreement related only to Quartz World's obligation to repay Toscano while not addressing or releasing Kahle's separate obligation under the Promissory Notes.

In sum, the Court is unable to discern from the language of the Settlement Agreement itself the scope of the release granted to Kahle because the term "Debt" is ambiguous. Both parties have offered reasonable, competing interpretations of the term supported by extrinsic evidence. The Court must deny Kahle's motion for summary judgment on this issue.

## Judicial Estoppel

Kahle also argues that Toscano should be estopped from pursuing her claim against Kahle based on the position she took in the Illinois Action, where she obtained a judgment against Quartz World. Dkt. No. 37-1 at 6. "The doctrine of judicial estoppel prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Courts generally examine three factors to determine whether a party should be judicially estopped from raising an argument: "(i) whether the party's positions in the two litigations are clearly inconsistent; (ii) whether the party successfully persuaded a court to accept its earlier position; and (iii) whether the party would derive an unfair advantage if not judicially estopped." *Id.*

Two cases cited by the parties are illustrative. In *American Transport Group LLC v. California Cartage Co., LLC*, the plaintiff ("ATG") filed two separate suits against two sets of defendants for the same lost delivery. 168 F. Supp. 3d 1074, 1076 (N.D. Ill. 2016). ATG

12

Case 24-02078-rmb    Doc 49    Entered 08/22/25 12:56:59    Page 12 of 15

arranged to have its designated carrier pick up a delivery at CCC's warehouse, where it was being stored by Pacorini. *Id.* ATG first sued CCC and Pacorini, claiming the delivery was lost because they negligently released the goods to a carrier other than ATG's designated carrier. *Id.* Two weeks later, ATG sued ACH (ATG's designated carrier, unnamed in the first suit) for receiving the goods but failing to deliver them. *Id.* at 1077. ATG obtained a default judgment against ACH based on its allegation that ACH received the goods. *Id.* CCC and Pacorini then moved for summary judgment, arguing that ATG's suit against them was precluded by its judgment against ACH. *Id.* The court held that ATG's argument that CCC and Pacorini were liable for failing to deliver the package to ATG's designated carrier (which was now known to be ACH) was clearly inconsistent with its position in the suit against ACH that ACH had received the goods. *Id.* at 1079. Only one of the arguments could be true; either CCC and Pacorini negligently released the package to some party other than ACH, or CCC and Pacorini released the package to ACH, who subsequently lost it. *Id*. Because ATG had already convinced a court that the latter theory was true, ATG was barred by judicial estoppel from seeking relief based on the former theory.

By contrast, in *CSI Worldwide, LLC v. TRUMPF Inc.*, TRUMPF contracted Lynch Exhibits to provide a service, and Lynch subcontracted CSI Worldwide for some of the work. 944 F.3d 661, 662 (7th Cir. 2019). CSI said that it agreed to do the work only if TRUMPF would pay it directly or guarantee Lynch's payment. *Id.* Lynch did not pay CSI, Lynch eventually filed bankruptcy, and CSI filed a claim in the bankruptcy. *Id.* CSI also filed a suit against TRUMPF seeking to recover the same amount for its unpaid work. *Id.* The Seventh Circuit reversed the district court's application of judicial estoppel to dismiss the claim. *Id.* at 663. The court noted that CSI had not asserted in the bankruptcy court that Lynch had sole

responsibility for the debt, nor had CSI tried to recover twice on the same debt. *Id.* It was possible for two parties to be liable for the same debt, and "[s]eeking to recover one debt from multiple persons is common and proper." *Id.*; *see also id.* ("Making a claim against the borrower in bankruptcy does not cut off recourse against the guarantor.").

Here, Kahle's argument stalls at the first factor because Toscano's position in this case is not clearly inconsistent with the judgment she obtained against Quartz Worldwide in the Illinois Action. Unlike the facts in *American Transport Group*, it is not impossible for Toscano to succeed in proving her claim against Kahle if the facts underlying her claim against Quartz World are also true. As discussed above, Toscano's position is that Kahle and Quartz World are *both* liable for the approximately $320,000 borrowed under the Promissory Notes, and Quartz World in effect guaranteed or became a co-obligor on the debt. A claim that Quartz World breached the Settlement Agreement does not necessarily preclude a separate claim that Kahle breached the Promissory Notes.

This case is more like *CSI Worldwide*, where two parties were liable for the same debt. While Toscano can collect the full debt only once, she can pursue collection against both Kahle and Quartz World until the debt is paid in full. *See, e.g., First Wisconsin Nat'l Bank of Oshkosh v. Kramer*, 74 Wis. 2d 207, 215, 246 N.W.2d 536, 540 (1976) (holding that a creditor can proceed with separate actions against a primary debtor under the note and a guarantor under the guaranty agreement). Toscano is not judicially estopped from seeking to enforce Kahle's liability under the Promissory Notes.

## CONCLUSION

For the foregoing reasons, the Court concludes that there are genuine issues of material fact as to whether Toscano released Kahle from liability under the Promissory Notes. The Court

14

further concludes that Toscano is not judicially estopped from claiming that Kahle has liability under the Promissory Notes.

Accordingly, IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment (Dkt. No. 37) is DENIED.

# # # # #